IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lekettia Jenkins, | C/A No.: 3:26-cv-2977-CMC-MHC |
| Plaintiff, | |
| v. | COMPLAINT |
| Waffle House Inc., | **Jury Trial Requested** |
| Defendants. | |

Plaintiff, Lekettia Jenkins, by and through undersigned counsel, brings this action against Defendant Waffle House Inc. and asserts claims for Age Discrimination, Disability Discrimination, and Retaliation based upon the following allegations.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

a. Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2025.

b. Plaintiff received a Notice of Right to Sue from the EEOC on April 23, 2026.

Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., and the anti-retaliation provisions of those statutes.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to Plaintiff's claims occurred in the District of South Carolina, where Plaintiff was employed and where Defendant, Waffle House Inc., conducts substantial business operations in Columbia, South Carolina.

## PARTIES

3. Plaintiff, Lekettia Jenkins, is an African American woman and a resident of Blythewood, Richland County, South Carolina.

4. Defendant, Waffle House Inc., is a corporation authorized to do business in South Carolina, with substantial operations and a base of business located in Columbia, South Carolina.

## FACTS

5. Plaintiff, Lekettia Jenkins, began her employment with Defendant, Waffle House, Inc., in 1995 as a Server at the 7555 Two Notch Road location in Columbia, South Carolina.

6. Through exceptional work performance, Plaintiff was promoted to Assistant Manager in approximately 1996, where she worked as a Third-Shift Manager until approximately 1998.

2

7. In May 1998, Plaintiff was promoted to Unit Manager and successfully managed multiple Waffle House restaurant locations.

8. In June 2008, Plaintiff was selected to participate in Defendant's Manager Trainee Program and successfully graduated from Waffle House University in August 2008.

9. Following her graduation, Plaintiff assumed responsibility for her first restaurant as Store Manager and immediately established herself as one of Defendant's top-performing managers. She became known throughout her market as the "Overtime Queen," a top operator, and one of the best production cooks in the area.

10. Between 2008 and 2010, Plaintiff consistently exceeded Defendant's performance expectations, achieved outstanding operational results, and earned a reputation as a dependable and highly successful leader.

11. As a result of her outstanding performance, Plaintiff was promoted to District Manager in or about 2010, where she successfully supervised multiple Waffle House restaurant locations.

12. While serving as District Manager, Plaintiff overcame significant personal hardships, including raising her children as a single mother and going through a difficult divorce.

13. Despite these challenges, Plaintiff continued to perform her duties successfully.

14. After her divorce, Plaintiff voluntarily stepped down from the District Manager position for personal reasons. This decision was entirely voluntary and was unrelated to her job performance.

15. Approximately fifteen years later, because of her extensive experience and exemplary performance history, Defendant promoted Plaintiff back to the position of District Manager in January 2023.

16. Shortly after returning to the District Manager position, Plaintiff's mother passed away. During this difficult period, Plaintiff initially received support from then-Division Manager Tre Goodwin.

17. On or about January 15, 2023, Plaintiff was informed that Shalonda Goings had been promoted to Area Manager and would become Plaintiff's supervisor.

18. Plaintiff had experienced prior conflicts with Ms. Goings over the preceding seven to eight years and immediately expressed concerns regarding Ms. Goings supervising her. In February 2023, Plaintiff met with Division Manager Tre Goodwin and Ms. Goings at Store No. 847 and voiced her concerns regarding Ms. Goings' treatment of her and the supervisory relationship.

19. In approximately March 2023, Tre Goodwin transferred to an out-of-state market, and Ryan Brown assumed the position of Division Manager. Ms. Goings remained Plaintiff's Area Manager.

20. Between March 2023 and June 2023, Plaintiff repeatedly complained to Supervisor Randy Coleman that Ms. Goings was bullying, harassing, intimidating, and excessively interfering with Plaintiff's daily operations despite being two levels above her.

21. Throughout 2023, Plaintiff repeatedly reported the harassment and hostile treatment to supervisors, Division Management, senior leadership, Human Resources, corporate personnel, and Defendant's Legal Department. Despite her repeated complaints, Defendant failed to conduct a meaningful investigation or take corrective action.

22. In February 2024, Plaintiff made a formal complaint to Defendant's Corporate Office concerning the harassment, bullying, and discriminatory treatment she was experiencing.

23. After receiving no meaningful response, Plaintiff contacted Corporate again in March 2024 because her complaints had not been investigated.

24. In July 2024, Plaintiff received her first disciplinary write-up allegedly because her restaurant was short-staffed. Plaintiff immediately notified Ms. Goings that she believed the disciplinary action was retaliatory and was issued because of her repeated complaints.

25. Later in July 2024, Ms. Goings and Ryan Brown confronted Plaintiff regarding her earned vacation time. During that meeting, Ms. Goings read a disciplinary memorandum aloud in the presence of other employees, humiliating Plaintiff and causing her to become emotionally distressed and leave the meeting in tears.

26. On July 12, 2024, Plaintiff again contacted Defendant's Corporate Office crying and reported the humiliating incident and Defendant's continued failure to investigate her complaints.

27. On August 13, 2024, Randy Coleman arrived at Plaintiff's workplace before her scheduled shift to issue another disciplinary write-up. Plaintiff became so emotionally overwhelmed that she was unable to review the write-up.

28. By August 2024, Plaintiff's work environment had become increasingly hostile due to constant harassment, retaliatory discipline, intimidation, and bullying by Ms. Goings and other members of management.

29. Because of the hostile work environment and the deterioration of her mental health, Plaintiff requested to step down from her management position. Defendant informed Plaintiff that stepping down was no longer an available option.

30. Approximately ten days later, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP"), despite Plaintiff's decades of successful performance.

31. Between November and December 2024, Plaintiff continued working despite suffering severe emotional distress, anxiety, and ongoing harassment. Plaintiff believed Defendant intended to replace her with a substantially younger employee, approximately 24 years old.

32. Throughout 2023 through 2025, Plaintiff documented numerous incidents of harassment, retaliation, and discriminatory treatment. She retained emails, text messages, disciplinary memoranda, written notes, and other documents supporting her complaints and demonstrating Defendant's failure to adequately investigate or remedy the misconduct.

33. Plaintiff also documented communications concerning the significant deterioration of her mental health resulting from Defendant's treatment.

34. In January 2025, Defendant falsely accused Plaintiff of theft and demoted her from her District Manager position. Plaintiff denies engaging in any theft or misconduct and alleges that the accusation was false and pretextual.

35. Plaintiff was not provided a legitimate explanation for her demotion. As a direct result of Defendant's harassment, retaliation, false accusations, and demotion, Plaintiff suffered a nervous breakdown and was forced to take a medical leave of absence.

36. Plaintiff requested that she no longer be required to work under Shalonda Goings, Ryan Brown, and the other managers responsible for the harassment, but Defendant failed to accommodate her request.

37. Upon returning from leave, Plaintiff remained under the same management team and continued to experience what she reasonably believed to be a hostile work environment.

## FIRST CAUSE OF ACTION
*Age Discrimination ("ADEA")*

38. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

39. At all relevant times, Plaintiff was over forty (40) years of age and was a member of the class protected by the ADEA.

40. Plaintiff possessed nearly thirty years of experience with Defendant and was exceptionally qualified for her position as District Manager.

41. Throughout her employment, Plaintiff consistently received promotions, completed Defendant's management training program, graduated from Waffle House University, successfully managed numerous restaurant locations, and earned a reputation as one of Defendant's top operators.

42. Plaintiff consistently met and exceeded Defendant's legitimate business expectations and had a proven record of leadership, operational excellence, profitability, and employee development.

43. Prior to the change in management in 2023, Plaintiff had not been subjected to the pattern of discipline, harassment, scrutiny, or adverse employment actions that followed.

44. Following the appointment of Shalonda Goings and Ryan Brown, Plaintiff was subjected to heightened scrutiny, excessive criticism, unwarranted disciplinary actions, and a hostile working environment despite her successful performance history.

45. Plaintiff reasonably believed Defendant sought to replace her with a substantially younger employee, approximately twenty-four (24) years of age, despite Plaintiff's superior qualifications, experience, and performance.

46. Defendant's asserted reasons for disciplining Plaintiff, placing her on a Performance Improvement Plan, accusing her of theft, and ultimately demoting her were false, inconsistent, and a pretext for unlawful age discrimination.

47. Defendant treated younger, similarly situated managers more favorably by failing to subject them to the same level of scrutiny, discipline, humiliation, or adverse employment actions.

48. Defendant intentionally discriminated against Plaintiff because of her age in violation of the ADEA.

## SECOND CAUSE OF ACTION
*Disability Discrimination and Failure to Accommodate under the Americans with Disabilities Act of 1990 (ADA)*

38. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

39. At all relevant times, Plaintiff was an individual with a disability within the meaning of the Americans with Disabilities Act. Plaintiff had been diagnosed with bipolar disorder, a mental impairment that substantially limited one or more major life activities.

40. Defendant became aware of Plaintiff's disability through Plaintiff's disclosures to management, Human Resources, and Plaintiff's medical leave of absence.

41. Throughout Plaintiff's employment, Defendant was aware that the conduct of Shalonda Goings, Ryan Brown, and other members of management was significantly exacerbating Plaintiff's bipolar disorder and negatively affecting Plaintiff's mental health.

8

42. Plaintiff repeatedly informed Defendant that the harassment, bullying, intimidation, retaliation, and hostile work environment were worsening Plaintiff's medical condition. Plaintiff requested reasonable accommodations, including being removed from the supervision of Shalonda Goings and Ryan Brown and being permitted to step down from her management position in order to preserve her health while continuing her employment.

43. Rather than engaging in the interactive process required by the ADA or providing a reasonable accommodation, Defendant denied Plaintiff's requests, refused to consider alternative accommodations, continued subjecting Plaintiff to the same supervisors, and intensified its disciplinary actions against Plaintiff.

44. Plaintiff also engaged in protected activity by requesting reasonable accommodations for her known disability, including requesting reassignment away from the supervisors whose conduct was exacerbating her bipolar disorder and requesting to step down from her management position so that she could continue working. Rather than accommodate Plaintiff, Defendant denied her requests and subjected her to additional adverse employment actions.

45. Defendant failed to reasonably accommodate Plaintiff's known disability.

46. Defendant further discriminated against Plaintiff because of her disability by subjecting her to unjustified disciplinary actions, placing her on a Performance Improvement Plan, falsely accusing her of theft, demoting her, and creating working conditions that exacerbated Plaintiff's bipolar disorder and ultimately forced Plaintiff to take medical leave.

47. Defendant's actions were intentional, willful, malicious, and undertaken with reckless disregard for Plaintiff's rights under the Americans with Disabilities Act.

9

## THIRD CAUSE OF ACTION
*Retaliation*

48. Plaintiff incorporates all preceding paragraphs.

49. Plaintiff engaged in protected activity by repeatedly complaining to her supervisors, Division Managers, Human Resources, Corporate personnel, and Defendant's Legal Department that she was being subjected to harassment, bullying, discrimination, and retaliatory treatment.

50. Plaintiff made formal complaints beginning no later than February 2024 and continued making protected complaints throughout 2024 and into 2025 after Defendant repeatedly failed to investigate her concerns.

51. Plaintiff specifically informed Defendant that she believed the disciplinary actions being taken against her were retaliatory.

52. Shortly after engaging in these protected activities, Defendant subjected Plaintiff to a continuous pattern of materially adverse employment actions, including:

a. unjustified disciplinary write-ups;

b. public humiliation through the reading of disciplinary memoranda in front of coworkers;

c. excessive scrutiny;

d. denial of requested relief;

e. placement on a Performance Improvement Plan;

f. false accusations of misconduct and theft;

g. demotion; and

h. forcing Plaintiff to take a medical leave because of the emotional harm caused by Defendant's conduct.

10

53. Defendant repeatedly ignored Plaintiff's complaints and failed to conduct a prompt, thorough, or impartial investigation despite numerous reports to management and Corporate.

54. The close temporal relationship between Plaintiff's protected complaints and Defendant's escalating discipline demonstrates a direct causal connection between Plaintiff's protected activity and Defendant's adverse employment actions.

55. Defendant's stated reasons for disciplining and demoting Plaintiff were not its true reasons but were instead pretext designed to conceal unlawful retaliation.

56. Defendant's retaliatory conduct would dissuade a reasonable employee from reporting discrimination or participating in protected activity.

57. Defendant intentionally retaliated against Plaintiff in violation of the ADEA and ADA.

## JURY TRIAL REQUESTED

58. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

59. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendant Waffle House Inc., actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

a. Declaring the actions complained of herein illegal;

b. In favor of Plaintiff and against the Individual Defendants for all causes of action herein alleged in an amount which is fair, just, and reasonable, and for actual, compensatory, special, and punitive damages;

c. In favor of Plaintiff and against the Defendants for all causes of action in an amount which is fair, just and reasonable;

11

d.  Issuing a permanent injunction enjoining Defendant, its agents, employees, officers, successors, assigns, attorneys, and all persons acting in concert or participation with Defendant from engaging in the unlawful employment practices alleged herein and from engaging in any employment practices that violate the Americans with Disabilities Act, including its anti-retaliation provisions, and the Age Discrimination in Employment Act., including its anti-retaliation provisions.

e.  Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's Age and other pled causes of action, including: physical and mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f.  Awarding Plaintiff her costs and expenses in this action, including reasonable Attorney's fees, and other litigation expenses; and

g.  Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

 __s/Donald Gist_____
Donald Gist, Fed ID 7178
GIST LAW FIRM, P.A.
4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

July 21, 2026

12